## McQUADE v. McNAUGHTON et al.[1]

*(District Court, E. D. Pennsylvania. January 29, 1892.)*

SHIPPING—FAILURE TO SHIP FULL CARGO—NEGLIGENCE OF CHARTERER.

The failure of a charterer to load a full cargo on a vessel before she was obliged to leave to reach another port, where she had contracted to be ready to deliver by a certain date, will not be excused on account of the incapacity of the master when the receipt of cargo and management of the vessel were in the hands of a competent person, and the failure to load resulted from the charterer's lack of expedition.

In Admiralty. Libel by James McQuade, master of the barge Kathleen, against Henry McNaughton & Co., to recover damages for failure to deliver a full cargo. Decree for libelant, with order to appoint commission if parties do not agree on damages.

*Flanders & Pugh*, for libelant.

*John A. Toomey*, for respondents.

BUTLER, District Judge. The respondents on June 7, 1890, chartered the barge Kathleen, owned and commanded by the libelant, to carry a cargo of railroad ties from King's Creek, Va., to Philadelphia, for 17 cents per tie. The charterers were to load the ties—which were to reach Philadelphia by July 1st. The barge arrived at King's Creek June 15th ready to load. Several days elapsed before any ties were put on board, and when it became necessary to start for Philadelphia she had taken in but 1,556. With these she proceeded on her voyage, as the charterers required her to do. The libel sets out claims to damage for the failure to load (or pay for,) a full cargo—which the libelant says is 3,000 ties; and for delay at Philadelphia. The second claim, however, is abandoned.

The respondents do not deny that the cargo was short; they admit that the barge could have carried only about 2,300. But it is alleged that the failure to load more than were carried arose from fault of libelant—that he was intoxicated during most of the time while at King's Creek, and that the respondents were thereby hindered and delayed in loading. The burden of proof respecting this is on the respondents; and the testimony does not support their allegation. There is no doubt that the libelant was drinking; to what extent need not be determined. The receipt of cargo, and management of the barge for the time, was in charge of his son, a young man 24 to 25 years old, fully competent for the service; and I do not find anything to justify belief that the respondents were delayed in their work by the libelant or by anything for which he is responsible. On the other hand it seems pretty clear that their failure to load a full cargo resulted from their own want of expedition. They had several other vessels to dispatch at the same time, and seem to have been tardy in beginning the work. The ties were gathered from different places, some at an inconvenient distance,

and carried in lighters—several of which were too small to be well adapted to the service.—I do not believe, however, that the barge had capacity for 3,000 ties. On the only previous occasions when she is shown to have carried a similar cargo, she had on 2,328 to 2,363. One of her own witnesses, Mr. Dempsey, says 2,300 oak ties, such as are made in the neighborhood of King's Creek, is a full load for her, in his judgment. The libelant and his son put her capacity a good deal higher. In view of all the evidence touching this point I do not think it would be safe to credit her with a capacity to carry more than 2,400.

The libelant will be allowed a decree for the balance unpaid, estimating her capacity at this rate. If the parties agree on the sum to be paid. in this view of the facts, the expense of a reference will be avoided.

Otherwise a commissioner must be appointed.